UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LARRY J. KRUM and JUDY KRUM,

        Plaintiff,

   v.

HARTFORD UNDERWRITERS
INSURANCE COMPANY,

        Defendant.

Case No. 3:11-cv-01017 -ST

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiffs, Larry J. Krum and Judy Krum ("Krums"), initially filed this case in state court against defendant, Hartford Underwriters Insurance Company ("Hartford"), alleging a claim for declaratory judgment regarding the interpretation of an insurance contract. Pursuant to 28 USC § 1446, Hartford timely removed that case to this court based upon diversity jurisdiction under 28 USC § 1332. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket # 11).

1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

After the Krums filed a Stipulated Amended Complaint[1] (docket # 13), a court trial was held on June 5, 2012, at which testimony and exhibits were received.

## FINDINGS OF FACT

The Krums first purchased personal auto insurance from Hartford in January 2009 while residing in California. That policy covered two vehicles and included bodily injury liability limits of $250,000/$500,000 and uninsured motorists ("UIM") limits of $30,000/$60,000, the mandatory minimum amount of UIM coverage required under California law. In April, 2009, the Krums moved to Oregon.

On October 19, 2009, Mr. Krum called Hartford to clarify the cost of insurance to cover a new vehicle which he intended to buy. At that time, Hartford's customer service representative ("CSR") explained to Mr. Krum that the Krums were currently carrying the minimum UIM coverage of $30,000/$60,000 required by California law, that the statutory minimum requirement for UIM coverage in Oregon was $25,000/$50,000, and that they could "either go 25/50 or either 50/100." Mr. Krum said he preferred the minimum UIM coverage of $25,000/$50,000. The CSR did not explain that under Oregon law, the UIM coverage limit on the Krums' policy would default to the same limit as their bodily injury liability limits ($250,000/$500,000) if the Krums did not within 60 days elect lower UIM limits in writing.

The Krums then received an Oregon Automobile Insurance Application ("Application") for one vehicle which reflected coverage selections consistent with Mr. Krum's prior conversation with Hartford. In relevant part, the Application provided as follows:

///

---

[1] The original Complaint filed in state court named five additional Hartford affiliates as defendants. However, in the Stipulated Amended Complaint, Hartford Underwriters Insurance Company was the sole defendant.

| Coverage Information | Limits/Deductibles | Premiums |
|---|---|---|
| Bodily Injury Liability | $250,000/$500,000 | $276.00 |
| Property Damage Liability | $100,000 | $103.00 |
| Medical Payments | | |
| **Uninsured Motorists** | **$25,000/$50,000 (Min)** | **$16.00** |
| Uninsured Motorists Property Damage | Rejected | |
| Personal Injury Protection | | |
|     Basic | Included | $43.00 |
|     Deductible | No Deductible | |
|     Included | | |

Plaintiff's Ex. 1a (emphasis added).

Mr. Krum signed and dated the Application on October 22, 2009, without making any changes. In addition to the Application, the Krums also received a form titled "Supplemental Application Your Coverage Selections in Oregon" ("Supplemental Application") which, in part, explained the UIM coverage options available in Oregon. Plaintiff's Ex. 2a-c. A box on the second page summarized the $25,000/$50,000 UIM coverage selection made by Mr. Krum during the October 19, 2009 telephone call as follows:

### Your Coverage Selections

Your coverage selections are shown below:

| | |
|---|---|
| Uninsured Motorists Coverage: | **$25,000/$50,000 (Min)** |
| Uninsured Motorists Property Damage Coverage: | **Rejected** |
| Personal Injury Protection: | **Basic No Deductible** |

**In order to confirm the coverage selection shown above, you must sign this form.**

**If you do not sign for Uninsured Motorists Coverage, it will be included in your policy at limits equal to your Bodily Injury Liability limits.**

Please refer to the following section [if] you would like to CHANGE your coverage selection.

Plaintiff's Ex. 2b (emphasis in original).

3 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

The third page of the Supplemental Application is titled "Change Section" and contains the following instruction at the top: "**Complete only if you wish to change your coverage selections.**" Plaintiff's Ex. 2c (emphasis in original). On the bottom of the same page near the signature lines, the form states: "**You and your Spouse/Co-owner (if applicable) must sign below to confirm your selections for Personal Injury Protection, Uninsured Motorists Coverage and Uninsured Motorists Property Damage.**" *Id* (emphasis in original). Mr. Krum placed a small "x" next to the $25,000/$50,000 UIM limits which listed a premium of $16.00 per vehicle and then signed and dated that page.

The next day, October 23, 2009, Mrs. Krum reviewed the Application and Supplemental Application. Based on that review and perhaps some independent research, she concluded that, unless otherwise specified, the UIM limits would be the same as the bodily injury liability limits of $250,000/$500,000. She did not want to have lower UIM limits and so advised Mr. Krum who agreed. Therefore, she placed a large "X" through the "Change Section," Mr. Krum's signature, and the date on the third page of the Supplemental Application. She did not sign or date that page or mark the box in the Change Section to change the UIM Coverage to $250,000/$500,000 with the listed premium of $40.00. However, she signed and dated the Application without making any changes to the coverages listed on the first page. Neither Mr. nor Mrs. Krum provided any explanation to Hartford at any time for drawing a large "X" through the Change Section of the Supplemental Application. Mr. Krum assumed that Hartford would call him if clarification was needed.

Both Mr. and Mrs. Krum had adequate language skills and opportunity to understand what was written and presented to them by Hartford.

4 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

On or before October 20, 2009, Hartford issued Oregon Automobile Policy No. 55 PHL218958, effective October 20, 2009, through October 20, 2010 ("Policy"), to the Krums covering one of the two vehicles previously insured by the California policy. The declarations page of the Policy shows all of the applicable coverages and limits of liability, including $25,000/$50,000 UIM Limits. Defendant's Ex. 108a.

Hartford's Underwriting Department interpreted the "X" on the Supplemental Application as crossing out only the Change Section and not Mr. Krum's signature and, thus, indicating his intent to not change the UIM limits of $25,000/$50,000. In addition, based on its interpretation of Oregon law, Hartford decided sometime in 2008 that it did not need the signature of both spouses to change insurance coverage limits and, therefore, no longer enforced that requirement.

The calculation of the Policy premium paid by the Krums was based, in part, on the $25,000/$50,000 UIM limits.

Within two weeks after the Policy was issued, the Krums called Hartford requesting that two vehicles be added and another deleted from the Policy. At that time, they did not dispute the stated minimum UIM Limits. Hartford issued three Endorsements to the Policy reflecting those changes and restating the $25,000/$50,000 UIM Limits. Defendant's Exs. 109a (adding UIM Property Damage), 110a (adding additional vehicle), 111a (deleting a vehicle and adding a different second vehicle).

In November 2009, the Krums called Hartford requesting that a loss payee be added to the Policy. At that time, they did not dispute the stated minimum UIM Limits. Hartford issued an Endorsement to the Policy reflecting that change and restating the $25,000/$50,000 UIM Limits. Defendant's Ex. 112b.

5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Later in November 2009, the Krums called to verify the cancellation of their California policy and again did not dispute the stated minimum UIM Limits in the Policy.

On April 16, 2010, the Krums were involved in a motor vehicle collision with an uninsured driver in which they both sustained physical injuries.

In July 2010, the Krums called Hartford to update the odometer readings for the two vehicles insured under the Policy and again did not disputed the stated minimum UIM limits.

In September 2010, Hartford notified the Krums that the Policy was being renewed for the following year with the same $25,000/$50,000 UIM coverage limits. Defendant's Ex. 113a (renewal for October 20, 2010, through October 20, 2011).

On or about September 24, 2010, the Krums notified Hartford for the first time of their desire to increase their UIM coverage limits to match the bodily injury liability limits in the Policy.

## CONCLUSIONS OF LAW

This case involves the intersection of a statutory requirement under Oregon's Insurance Code, the terms in the Application and Supplemental Application, and the Krums' conduct. Oregon law requires the same UIM coverage as bodily injury liability coverage unless the insured elects lower limits in writing. The Krums contend that because they did not elect lower limits in writing, their UIM coverage is the same as the bodily injury liability coverage, namely $250,000/$500,000.

Under Oregon law, the Policy must have "the same limits for [UIM] coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits." ORS 742.502(2)(a). To elect lower limits, "the named insured shall sign a statement electing

6 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

lower limits" which "shall contain a brief summary . . . and shall state the price for coverage." ORS 742.502(2)(b). However, that statement "need not be signed . . . when the policy is amended, renewed, modified or replaced by the same company . . . unless the liability limits of the policy are changed." ORS 742.502(2)(c).

The Krums rest their case on a straightforward argument. Oregon law requires "the same limits for [UIM] coverage as for bodily injury liability coverage unless a named insured in writing elects the lower limits." ORS 742.502(a). Furthermore, the Supplemental Application expressly states that failure to sign for UIM coverage will result in UIM coverage being included in the policy "at limits equal to your Bodily Injury Liability Limits," and the Change Section states that both "[y]ou and your Spouse/Co-owner . . . must sign . . . to confirm your selections for . . . [UIM] Coverage and [UIM] Property Damage." Because only Mr. Krum signed the Change Section, which he later repudiated by means of Mrs. Krum's "X," the Krums contend that they intended to elect exactly what the Supplemental Application states, namely UIM coverage "at limits equal to [their] Bodily Injury Liability limits."

Hartford raises four arguments in support of its contention that the Policy provides only $25,000/$50,000 in UIM coverage. First, based on its interpretation of ORS 742.502(2)(c), Hartford contends that a written statement electing lower limits was unnecessary. Second, even if a written statement electing lower limits was necessary, Hartford contends that only one spouse's signature was required. Third, Hartford contends that even if two signatures were required, it waived that requirement. Finally, Hartford contends that through their subsequent conduct, the Krums effectively acquiesced to the lower UIM coverage limits. For the reasons that follow, this court rejects each of these arguments and concludes that, by operation of law, the Policy provided the Krums with $250,000/$500,000 UIM coverage.

7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. <u>No Signed Statement Necessary</u>

Hartford first contends that no signed statement was required to lower the UIM coverage because the Oregon Policy simply replaced the policy Hartford had previously issued to the Krums in California. The Oregon Policy deletes one of the insured vehicles, but has the same bodily injury liability limits. The only material difference between the two policies is a change in the UIM coverage limits. Under ORS 742.502(2)(c), a statement electing lower limits "need not be signed . . . when the policy is amended, renewed, modified or replaced by the same company . . . unless the liability limits of the policy are changed." ORS 742.502(2)(c). Hartford contends that a change in "the liability limits of the policy" in ORS 742.502(2)(c) should be construed to exclude a change in UIM coverage limits.

A court must first examine the text and context of a statutory provision to determine its meaning. In performing that exercise, "terms of common usage within the text of a [statute] generally should be given their plain, natural, and ordinary meaning unless specifically defined or used in some other way." *State v. Hogevoll*, 348 Or 104, 110, 228 P3d 569, 572 (2010) (citation omitted). Unless otherwise indicated by the text and context, the same word has the same meaning in related statutory provisions. *Tharp v. PSRB,* 338 Or 413, 422, 110 P3d 103, 107 (2005). The contested phrase, "liability limits," is one term in ORS 742.502(2)(c) governing UIM coverage, which itself is but one sentence in one section of Oregon's Motor Vehicle Liability Insurance statute, ORS Chapter 742. That statute does not define the term "liability" or the phrase "liability limits." Hartford argues that "liability limits" is a phrase which includes only "bodily injury liability limits" and does not include UIM coverage limits.

It is noteworthy that the penultimate sentence in the preceding section, ORS 742.502(2)(b), states: "The statement [electing lower limits for UIM coverage] shall

8 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

remain in force until rescinded in writing by a named insured or until the motor vehicle *bodily injury liability limits* are changed" (emphasis added).  The use of the phrase "bodily injury liability limits" in that sentence suggests that a different meaning than "liability limits" used in the following section.  The logical conclusion is that the phrase "liability limits" without the modifier "bodily injury" is broader than the phrase "bodily injury liability limits."  Thus, the phrase "liability limits" in ORS 742.502(2)(c) logically includes both "bodily injury" and "UIM" liability limits.

At first blush, the UIM provisions in ORS Chapter 742 are somewhat difficult to decipher.  The statute does not use the term "UIM liability limits," but instead refers repeatedly to UIM "coverage" and, in ORS 742.502(2)(a), requires "*limits* for [UIM] coverage" which match those for bodily injury liability coverage.  In *Bergmann v. Hutton*, 337 Or 596, 101 P3d 353 (2004) (*en banc*), the Oregon Supreme Court discussed various provisions of ORS Chapter 742 in order to determine whether an insurer is entitled to offset certain amounts against the insured's UIM coverage.  While not addressing the written election requirement, *Bergmann* is instructive in the context of interpreting the phrase "liability limits" by clarifying that the function of UIM "coverage" is to set an insurer's "liability limit."  *Id* at 607, 101 P3d at 359-60. Another more recent case interpreting ORS 742.502(2)(a) similarly supports this conclusion: "[W]ithin [ORS 742.502(2)(a)] 'coverage' *does* include limits on an insurer's liability . . . [because it] requires a 'policy' to have the same 'limits' for uninsured motorist 'coverage' that the policy places on bodily injury liability 'coverage.'"  *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 213, 179 P3d 633, 642, *modified on other grounds*, 345 Or 373, 195 P2d 59 (2008) (*en banc*).

9 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Hartford's interpretation would completely swallow the requirement in the first sentence of ORS 742.502(2)(a) for a writing to elect lower UIM coverage. If, as Hartford contends, the term "liability limits" in ORS 742.502(2)(c) includes only "bodily injury liability limits," then whenever an insured elected UIM limits lower than the bodily injury limits from the same insurance company or group of companies, no signature would be required as long as the insured did not change the existing bodily injury liability coverage. This interpretation is at odds with the obvious overall intent of the statute to prevent an insured from making an unwitting or uninformed decision to provide less protection for himself or herself (or for his or her passengers) than provided to others.

For these reasons, this court rejects Hartford's argument that ORS 742.502(2)(c) permits the lowering of the UIM coverage limits in the Policy absent a written statement by the Krums electing such lower limits. Therefore, Hartford was required to obtain a signed statement from "the named insured . . . electing lower limits."

## II. Only One Signature Required

Hartford next contends that Mr. Krum's signature alone was sufficient to bind the Krums. Since the Policy is addressed to both Mr. and Mrs. Krum, both are named insureds. Only one named insured, Mr. Krum, signed the Change Section selecting UIM coverage of $25,000/$50,000. Interpreting "the named insured" in ORS 742.502(2)(b) to mean "a named insured," Hartford contends that Mrs. Krum's signature is not required to elect those UIM limits.

The language used in ORS 742.502(2) is inconsistent by referring to a written election of lower limits by "a named insured" in subsection (a) and by "the named insured" in subsection (b). Whether all named insureds must sign the required statement has not yet been addressed in Oregon, and other courts have reached differing results. The majority of jurisdictions have

concluded that where the policy lists more than one named insured, the signature of one named insured rejecting UIM coverage is ineffective as to any other named insured. *See Nationwide Ins. Co. v. Nicholas*, 868 So2d 457, 461-62 (Ala Civ App 2003); *State Farm Fire & Casualty Co. v. Garrett*, 783 NE2d 329, 338 (Ind Ct App 2003); *Preferred Risk Ins. Co. v. Cooper*, 638 NW2d 717, 719 (Iowa 2002); *Plaster v. State Farm Mut. Auto. Ins. Co., Inc.,* 791 P2d 813, 814 (Okla 1989). Other courts have held that one spouse has the right to waive UIM coverage on behalf of the other spouse. *Messerly v. State Farm Mut. Auto. Ins. Co.*, 662 NE2d 148, 149 (Ill App Ct 1996); *Hall v. Allstate Ins. Co.*, 770 P2d 1082, 1083 (Wash App Ct 1989), *review denied*, 777 P2d 1051 (Wash 1989). However, *Messerly* and *Hall* are distinguishable.

*Messerly* involved the sufficiency of an offer for additional UIM coverage required by Illinois law. The court concluded that it would be "impractical" to require every potential "insured" or "additional insured" to speak with an insurance agent in order to be offered additional UIM coverage. *Messerly*, 662 NE2d at 151. *Hall* rested primarily on the court's conclusion that the UIM coverage provision should be treated no differently than any other insurance provision under Washington's community property statute. The court held that either spouse has the right to waive UIM coverage for both spouses and declined to consider the application of the statute requiring a written rejection of UIM coverage as to named insureds who are not spouses. *Hall*, 770 P2d at 1083. No such community property overlay applies in Oregon. Moreover, both *Messerly* and *Hall* involved what the respective courts deemed legislative clarifications of prior legislative intent supporting the decision. *See Messerly*, 662 NE2d at 150-51 (discussing legislative clarification in *Hall* and post-application statutory change in Illinois). Unlike *Messerly*, this case involves a statutory requirement for a written election of lower UIM coverage within 60 days of the election. And unlike *Hall*, Hartford cites no

community property provision or legislative clarification suggesting that anything less than a written statement by each insured will suffice to trump the legislative preference for "the same limits for uninsured motorist coverage as for bodily injury liability coverage" expressed in ORS 742.502(2)(a).

One commentator has concluded the "growing trend is that a rejection of UM/UIM coverage or a selection of lower limits of UM/UIM limits by one named insured is binding on all named insureds and all additional insureds, rendering it unnecessary for insurers to obtain additional rejections or waivers from all named insureds and all potential additional insureds." COUCH ON INSURANCE (3rd Ed.), § 122:50 (citations omitted). However, that trend appears to be statutory and is inconsistent with a named insured's reasonable expectations under Oregon law. ORS 742.502 mandates that motor vehicle liability policies issued for delivery in Oregon have the same UIM coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. Thus, a named insured, who has not rejected UIM coverage in writing, may reasonably expect that the UIM coverage will match that the bodily injury liability coverage as mandated by law. *See Preferred Risk Ins. Co.*, 638 NW2d at 719; *Plaster*, 791 P2d at 814-15.

### III.  Waiver of the Two Signature Requirement

Hartford next argues that it accepted a single signature on the Supplemental Application by the "Named Insured" (Mr. Krum) because it waived the signature of the "Spouse/Co-Owner" (Mrs. Krum) on the Supplemental Application. "The doctrine of waiver applies broadly to any contract term. As a general rule, a party to a contract may waive the performance of any provision of the contract that is for its benefit." *Wright v. State Farm Mut. Auto Ins. Co.*, 223 Or App 357, 368-69, 196 P3d 1000, 1006 (2008) (internal brackets, quotation marks, and citations

omitted).  However, "material conditions of the contract cannot be waived."  *Burness v. Bruce*, 97 Or App 298, 301, 776 P2d 32, 34 (1989).

Hartford's argument is premised upon the contentions that the requirement of the signature of the "Spouse/Co-Owner" on the Supplemental Application was for its benefit and was non-material due to other indices of the Krums' intent to select $25,000/$50,000 UIM coverage.  Hartford is wrong on both counts.

In the event of an accident with an uninsured motorist, a lower UIM limit obviously benefits the insurer by reducing its exposure.  However, that is not the issue here.  Instead, the signature requirement presupposes an election for lower UIM coverage, and the issue is whether the requirement of both spouses' signatures to elect UIM coverage less than bodily injury liability coverage is for Hartford's benefit.  The statutory signature requirement is intended to ensure that the insureds make their decision to lower their UIM coverage limits with full knowledge of the benefits provided by uninsured and underinsured motorist coverages and the relative cost of UIM coverage equal to the bodily injury liability coverage versus lower UIM coverage.  *See* ORS 742.502(2)(b).  The requirement of a written statement electing lower UIM coverage is a consumer protection provision intended for the benefit of the purchaser of insurance, not for the benefit of the insurer.  Because the provision is intended to benefit the Krums, it is not a condition which Hartford may waive.

Moreover, there is no doubt that the requirement of a signed statement electing lower UIM coverage is a "material" term to any motor vehicle liability insurance policy purporting to include lower UIM limits than bodily injury liability limits.  Quite simply, a legislatively-mandated requirement is quintessentially "material."

13 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

One of the cases cited by Hartford is distinguishable because it clearly involved waiver of a non-material term intended to benefit the party waiving the term. *Alk v. Lanini*, 61 Or App 158, 656 P2d 367, 369 (1982) (time-is-of-the-essence clause intended to benefit both parties could be waived by either party with regard to the timing of the other party's performance, but a particular party's waiver could not excuse his own timely performance). The other involved a material term that, as here, could not be waived. *Burness v. Bruce,* 97 Or App 298, 301-02, 776 P2d 32, 34 (1989) (even if acceptance of partial payments over the term of the contract could constitute a waiver, "plaintiff nevertheless could not waive his right to receive the full contract price, because that right was a material condition to his own performance").

Thus, this court rejects Hartford's suggestion that it had the authority to waive the requirement of a signature by the "Spouse/Co-Owner" on the Supplemental Application.

## IV.  Conduct Affirming Acceptance of Lower UIM Limits and Equitable Estoppel

Finally, as evidence that the Krums assented to the lower UIM limits, Hartford cites both the markings made by the Krums on the Application and Supplemental Application, as well as their silent receipt of repeated declarations pages listing a $25,000/$50,000 UIM coverage limit over the following months.

The Krums returned to Hartford the executed Application with no changes made to the listed UIM coverage limits and the Supplemental Application with check boxes in the $25,000/$50,000 UIM coverage box and the "X" across the Change Section, Mr. Krum's signature and the date. According to Harford, the more plausible explanation of the Krums' markings on the Supplemental Application is that they initially completed the "Change Section," but "X'd" it out to indicate that they intended to select $25,000/$50,000 UIM coverage limits

listed in the Application. This explanation is confirmed by the Krums' silence upon later receiving the Policy with a declarations page listing $25,000/$50,000 UIM coverage limits.

The thrust of this argument is that the Krums' objective conduct amounted to a waiver of their statutory right under ORS 742.502(2) to have UIM limits equal to the bodily injury liability limits unless they signed a written statement within 60 days confirming the election of lower limits. Under Oregon law, "adults with the capacity to do so are free to waive a panoply of rights, statutory and constitutional, so long as the waiver is knowing and intentional." *In re Marriage of McInnis*, 199 Or App 223, 236, 110 P3d 639, 645-46 (2005) (citing cases). However, waiver of statutory rights requires "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *DK Inv. Co., LLC v. Inter-Pacific Development Co.*, 195 Or App 256, 263, 97 P3d 675, 679 (2004) (internal quotation marks and citations omitted).

Alternatively, Hartford contends that the Krums are equitably estopped to enforce their statutory rights. "To constitute an equitable estoppel, or estoppel by conduct, there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it." *Bennett v. City of Salem*, 192 Or 531, 541, 235 P2d 772, 776 (1951) (*en banc*, citations omitted). "For equitable estoppel to apply, the false representation 'must be one of existing material fact, and not of intention, nor may it be a conclusion from facts or a conclusion of law.'" *Day v. Advanced M&D Sales, Inc.*, 336 Or 511, 519, 86 P3d 678, 683 (2004), quoting *Welch v. Washington Cnty.* 314 Or 707, 716, 842 P2d 793, 799 (1992).

15 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

The difficulty with this line of argument is threefold.  First, Oregon law mandates that motor vehicle bodily injury liability policies "*shall*" have the same UIM coverage as for bodily injury liability coverage "*unless* . . . the named insured shall sign a statement electing lower limits within 60 days of the time the named insured makes the election."  ORS 742.502(2)(a)-(b) (emphasis added).  The statute contains no other condition which will allow the insurer to include lower UIM coverage.  For an insurer to satisfy a statutory coverage obligation, the critical issue is "to determine the legislature's intention in enacting [the] statute rather than the parties' contractual intention in entering into the insurance contract."  *Fox v. Country Mut. Ins. Co.*, 327 Or 500, 506, 964 P2d 997, 1001 (1998).  The UIM provisions are intended to protect consumers, and the requirement for a signed election of lower UIM limits ensures that the public does not unwittingly lower their UIM limits and provide better coverage for other drivers than they provide for themselves against uninsured or underinsured drivers.

"Oregon courts generally hold that an insurer's failure to provide UIM coverage when required by statute results in the imputation of such coverage."  *Hanson v. St. Paul Fire & Marine Ins. Co.*, No. CV 10-1161-PK, 2011 WL 1086528, at *4 (D Or March 22, 2011) (citing cases).  Because the Krums did not complete a written statement electing lower UIM limits as required by ORS 742.502(2)(c), UIM limits equal to the Policy's bodily injury liability limits were imposed by operation of law 60 days after Mr. Krum orally elected lower UIM limits.  Furthermore, estoppel "may be established only where there was a right of reliance upon the act of the party sought to be estopped, and such reliance was reasonable."  *Bash v. Fir Grove Cemeteries, Co*., 282 Or 677, 687, 581 P2d 75, 80 (1978).  Here, the controlling statute requires a signed writing from the Krums electing lower UIM limits.  Hartford had no right to rely on any

other type of assent to lower UIM limits. *Id* (cemetery authority had no right to rely on oral agreement consenting to disinterment when statute required written consent).

Second, the Supplemental Application states that "[**i**]**f you do not sign for Uninsured Motorists Coverage, it will be included in your policy at limits equal to your Bodily Injury Liability Limits,**" and the "Change Section" states that: "**You and your Spouse/Co-Owner (if applicable) must sign below in order to confirm your selections for Personal Injury Protection, Uninsured Motorists Coverage and Uninsured Motorists Property Damage.**" Plaintiff's Ex. 2b, 2c (emphasis in originals). That language clearly states that failing to sign the form will result in UIM coverage limits equal to bodily injury liability limits, consistent with ORS 742.502. Mrs. Krum testified that she intended to retain the higher UIM limits by crossing out and not signing the Supplemental Application.

Hartford nevertheless contends that the "X" through the Change Section of the Supplemental Application is not a clear, unequivocal indication of the Krums' intent to elect UIM coverage the same as the bodily injury liability coverage. During the application process, Hartford made Mr. Krum aware of the higher UIM limits available as required under Oregon law, which he orally rejected. As a result, Hartford contends it was not obligated to inquire further of the Krums with respect to their UIM limits selection after the Policy was issued, citing *Wood v. State Farm Mut. Auto. Ins. Co.*, 100 Or App 576, 579-80, 787 P2d 504, 505-06, *review denied*, 310 Or 133, 794 P2d 795 (1990) (insurer not required to give notice of option to obtain increased coverage at each renewal date). However, *Wood* was decided under ORS 743.789 (renumbered ORS 742.502 in 1989) which simply required the insurer to *notify* the insureds of the option of obtaining increased underinsured motorist and UIM coverage. Unlike that prior version, ORS 742.502 now requires UIM limits to match bodily injury liability limits unless the

17 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

named insured in writing elects lower UIM limits.  Without a writing executed within 60 days from the insured's election of lower UIM limits that clearly and unequivocally demonstrates an intent by the insured to lower the UIM limits, those limits match the selected bodily injury liability limits by operation of Oregon law.

      Finally, Hartford points out that the Krums failed to notify Hartford that the declarations pages evidencing later amendments and renewals of the Policy stated the wrong amount of UIM coverage.  In that vein, Hartford likens this case to *Citibank S.D. N.A. v. Santoro*, 210 Or App 344, 349, 150 P3d 429 (2006), in which the court found that Santoro's conduct of receiving, not cancelling, and using a credit card constituted mutual assent to the terms of the credit card agreement.  In determining whether a contract exists, "we examine the parties' objective manifestations of intent, measured by whether a reasonable person would construe a promise from the words and acts of the other."  *Wooton v. Viking Distrib. Co., Inc.*, 136 Or App 56, 59, 899 P2d 1219, 1222 (1995), citing *Real Estate Loan Fund v. Hevner*, 76 Or App 349, 354, 709 P2d 727, 730-31 (1985).  In contrast here, the Krums do not deny the existence of the Policy, but instead dispute the applicable UIM coverage limits under Oregon law.  *Santoro* would be more similar to this case if the credit card agreement contained an illegal term, such as a usurious interest rate.  Even if the credit card agreement could be enforced based on Santoro's mutual assent, the interest rate would nonetheless be unenforceable by operation of law.  The Krums' failure to follow-up on what they now contend were inaccurate UIM limits of $25,000/$50,000 was not conduct manifesting assent to that term.

      Oregon law requires a written statement electing lower UIM limits, and the Supplemental Application stated that the UIM limits would match the bodily injury liability limits if they did not both sign it.  Although Mr. Krum orally elected lower UIM limits, the Krums did not sign (or

repudiate) a written statement within 60 days electing those lower UIM limits as required by ORS 742.502(2).

## CONCLUSION

For the reasons stated above, the Krums are entitled to a Judgment declaring that, pursuant to ORS 742.502(2), the UIM coverage limits in the Policy match the bodily injury liability coverage limits of $250,000 per person and $500,000 per accident.

DATED July 9, 2012.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge

19 – FINDINGS OF FACT AND CONCLUSIONS OF LAW